# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RAY JONES, SR., | ) Case No.: 1:12-cv-01463 – JLT |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S MOTION |
| v. | ) FOR JUDGMENT ON THE PLEADINGS |
| | ) (Doc. 46) |
| UNITED STEELWORKERS, et al., | ) |
| | ) ORDER ON JUDICIAL NOTICE |
| Defendants. | ) (Doc. 47) |
| | ) |

Defendant United Steel, Paper and Forest, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "Union") currently presents its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. 47). Plaintiff opposes the motion. (Doc. 51). On September 26, 2013, the Court heard oral arguments by both parties, who previously consented to the jurisdiction of the Magistrate Judge.

Having read and considered the pleadings, and, for the reasons set forth below, the Court **GRANTS** the Union's motion for judgment and **DISMISSES** the matter **WITH PREJUDICE**.

I.   **REQUEST FOR JUDICIAL NOTICE**

The Union requests that the Court take judicial notice of certain court pleadings, an arbitration award, and a collective bargaining agreement, pursuant to Fed. R. Evid. 201. (Doc. 47). Plaintiff does not oppose the request.

Fed. R. Evid. 201 permits a court to take judicial notice of any facts which may be "accurately

1

and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) and (d). The Rule permits a court to take judicial notice of its own court records. Hayes v. Woodford, 444 F. Supp. 2d 1127, 1136 (S.D. Cal. 2006). A court may also take judicial notice of other courts' and administrative agencies' orders and decisions. Kurtcu v. U.S. Parking Inc., C 08-02113 WHA, 2008 WL 2445080 (N.D. Cal. June 16, 2008) (*citing* Papai v. Harbor Tug & Barge Co., 67 F.3d 203, 207 (9th Cir.1995) (overruled on other grounds). Finally, a court may judicially notice public records outside of the pleadings. Hayes, 444 F.Supp.2d at 1137. The Court addresses each request as follows:

### a. Arbitration Award in FMCS Case 12–00716–A–William Jones. (Doc. 47-1).

The Union requests that the Court judicially notice the arbitration award in FMCS Case 12-00716-A-William Jones, dated January 27, 2013. (Doc. 47-1). The award was issued by the Federal Mediation and Conciliation Services, which is a federal agency, and the award addresses the issue of Plaintiff's termination. While Plaintiff was not present at this arbitration, (47-1 at 3), he does not object to the Court taking judicial notice of the document. Thus, the request is **GRANTED**.[1]

### b. Complaint in Kern County Case Number S-1500-cv-275957. (Doc. 47-2).

The Union requests judicial notice of the complaint and its attached pleadings filed in Jones v. Lehigh, in the Kern County Superior Court Case Number S-1500-cv-275957 on February 23, 2012. (Doc. 47-2). While a court may judicially notice state proceedings, a court may only judicially notice the "existence of a motion or of representations having been made therein." United States v. S. Cal. Edison Co., 300 F. Supp. 2d 964, 973-9744 (E.D. Cal. 2004). The court cannot judicially notice the veracity of any facts contained within the public record. S. Cal. Edison Co., 300 F. Supp.2d at 975. Thus, the Court **GRANTS** the Union's request that the Court take judicial notice of Plaintiff's complaint and attached exhibits in Kern County case number S-1500-cv-275957. (Doc. 47-2). In doing so, the Court limits the scope of its judicial notice to the representations Plaintiff made within the document and the parties named therein.

---

[1] While the Court judicially notices the arbitration award, the Court does not defer to the FMCS's decision and does not rely on the factual findings contained therein in rending its opinion in the present matter.

      **c.**      **Pleadings in <u>Jones v. Lehigh Southwest Cement Co., Inc.</u>, Case No. 1:12-cv-00633-AWI-JLT. (Docs. 47-3, 47-4, 47-5, 47-6, 47-8).**

Next, Plaintiff requests that the Court take judicial notice of certain pleadings contained in <u>Jones v. LeHigh Southwest Cement Co., Inc</u>., Case No. 1:12-cv-00633-AWI-JLT, which is presently pending before this Court. (Docs. 47-3, 47-4, 47-5, 47-6, 47-8). As noted above, pleadings pending in other matters before the Court are the proper subject for judicial notice. <u>Hayes</u>, 444 F. Supp. 2d at 1136. Therefore, the Union's request for judicial notice of the pleadings contained in Case No. 1:12-cv-00633-AWI-JLT (Docs. 47-3, 47-4, 47-5, 47-6, 47-8) is **GRANTED.**

      d**.**      **Collective Bargaining Agreement. (Doc. 47-9).**

Finally, the Union requests the Court take judicial notice of the collective bargaining agreement between the Union and Lehigh. Previously, this Court declined to take judicial notice of collective bargaining agreements where the parties do not question the authenticity of a referenced agreement. <u>Magallanez v. Engineers & Scientists of California, Local 20-Int'l Fed'n of Prof'l & Technical Engineers</u>, 2:11-CV-03466-GEB, 2012 WL 2872816, at * 1 (E.D. Cal. July 11, 2012). In <u>Magallanez</u>, this Court reasoned that "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the [writing] and its authenticity is unquestioned." <u>Magallanez</u>, 2012 WL at * 1 (*quoting* <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir.2007)). Thus, this Court concluded that it need not judicial notice was not necessary. <u>Id</u>.

The Union presents what it purports to be the "collective bargaining agreement that governed Plaintiff's employment." (Doc. 47 at 2). Plaintiff seemingly attached portions of the same document to his opposition to motion for judgment on the pleadings. (Doc. 51 at 15-25). Notably, it appears that the Union has attached addendums and policies, such as a LeHigh Southwest Cement Company's Substance Abuse Policy, to the collective bargaining agreement. (Doc. 47 at 93-101). Nonetheless, given that the authenticity of these documents is unquestioned and both parties substantially rely on the collective bargaining agreement and related policies, the Court will consider the documents attached in Exhibit 9. (*See* Doc. 47-9 at 1-111)

///

///

## II. FED. R. CIV. P. 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

### I. Factual and Procedural Background

#### A. Factual Background

Plaintiff is an African American individual over the age of forty. (Doc. 1-1 at 7). Lehigh Southwest Cement Company ("Lehigh")[2] hired Plaintiff as a laborer in its cement plant in Tehachapi, California, in December of 2007. Id. at 8; (Doc. 51 at 5). Plaintiff was employed under the Collective Bargaining Agreement ("CBA") between Lehigh and the Union, which was in effect for the duration of Plaintiff's employment. *See* (Docs. 47-9, 51).[3, 4]

On August 9, 2011[5], Lehigh management assigned Plaintiff to instruct a new employees on how to operate a vacuum truck. (Doc. 47-5 at 5). Sometime during that day, Plaintiff alleges that another Lehigh employee damaged the fender of the vacuum truck. Id. at 6. Lehigh management then ordered Plaintiff to submit to a drug test. Id. Lehigh personnel then transported Plaintiff to the Tehachapi Valley District Hospital in Tehachapi, California, after Shawn Pugh, the Union President, allegedly declined to accompany Plaintiff to the drug testing site. Id. at 7. On August 19, 2011, Plaintiff received a termination letter and final paycheck from Lehigh due to a "dirty drug test." (Doc. 47-5 at 8).

In his complaint, Plaintiff avers that a "Union Representative" filed a filed a false grievance against him. (Doc. 1-1 at 5). Furthermore, Plaintiff seemingly alleges that the union failed to represent him during the drug test in violation of the substance abuse policy contained in the CBA.[6] Id. Plaintiff seeks monetary recompense for the financial and medical hardships caused by his termination from Lehigh. Id.

---

[2] Lehigh is not a party to the present matter.
[3] The CBA was originally in effect from February 1, 2006, through January 31, 2010. (Doc. 47-9 at 1). The policy, however, appears to have been extended, at least, through the period of Plaintiff's termination, given that both parties rely on the same agreement to support their positions.
[4] The CBA substance abuse policy terms also appear to have been effective for the duration of Plaintiff's employment, given that Plaintiff explicitly relies on the terms of the policy. (Doc. 47-9 at 93-101; Doc. 51 at 8-9).
[5] Plaintiff's complaint is void of sufficient factual detail surrounding his termination. Thus, the Court must refer to Plaintiff's amended complaint in Jones v. Lehigh Southwest Cement Co., Case. No. 1:12-cv-633, filed on August 20, 2013, to supplement the events surrounding his termination from Lehigh. (Doc. 47-5).
[6] On the other hand, Plaintiff admits that a grievance was pursued on his behalf through all of the steps outlined in the CBA including completing an arbitration, though he disagrees with the level of rigor exerted to achieve a favorable outcome and disagrees as to the timeliness of these efforts.

During the pendency of the present matter, the Union pursued a grievance on Plaintiff's behalf on the issue of whether Lehigh "terminated [Plaintiff] in accordance with the collective bargaining agreement." (Doc. 47-1 at 3). An arbitration hearing occurred on November 7, 2012. Id. Though the hearing was twice rescheduled to accommodate Plaintiff, in the end, Plaintiff did not attend. Id. FMCS arbitration concluded that Plaintiff was terminated according to the provisions of the CBA. Id. at 14.

**B. Procedural Background.**

On September 7, 2011, Plaintiff filed a charge against the Union with the National Labor Relations Board. (Doc. 1-1 at 12). Plaintiff filed an amended charge on January 9, 2012, alleging that the Union "breached its duty of fair representation by willfully misinforming [Plaintiff] that [the Union] filed a grievance regarding his termination on his behalf, and were in the process of taking it to arbitration." Id. at 17.

On February 23, 2012, Plaintiff initiated litigation related to the present matter, in the Kern County Superior Court against Lehigh, which Lehigh removed to this Court on April 20, 2012. Jones v. Lehigh Southwest Cement Co., Inc., Case No. 1:12-cv-00633-AWI-JLT, Docs. 1 and 1-1. In Jones v. Lehigh, Plaintiff alleges that Lehigh wrongfully terminated him in violation of the CBA. *See* Id. Through a series of successive motions, Lehigh sought dismissal of Plaintiff's second amended complaint. Id. at Doc. 46. On June 14, 2013, the Court dismissed with prejudice the claim that Lehigh violated provisions of the CBA. Id. at Doc. 58.

On April 13, 2012, Plaintiff filed the instant matter in the Kern County Superior Court. (Doc. 1-1 at 2). The matter was removed to this Court on November 7, 2012. (Doc. 1) The complaint alleges multiple causes of action against the Union. Id. at 4. Specifically, Plaintiff alleges that the Union: (1) failed to represent him, (2) violated the CBA,[7] and (2) committed fraud. Id. On September 7, 2012, the Union removed the matter to the U.S. District Court for the Eastern District of Califoriania. (Doc. 1). The Union denied all charges in its answer filed on September 14, 2012. (Doc.

---

[7] Plaintiff also alleges a breach of contract claim. However, Plaintiff omits reference to any other agreement other than the collective bargaining agreement in his complaint. Thus, the Court's reference to "breach of contract claim" and "breach of the collective bargaining agreement" are used interchangeably in this Opinion.

5

9).

On August 7, 2013, Plaintiff filed a first amended complaint. (Doc. 43) On August 14, 2013, the Court struck the first amended complaint given that it was filed without leave of the court and after (by nearly a year) Defendant had filed its answer. (Doc. 45)  In the order striking the first amended complaint, the Court instructed,

> Pursuant to Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within 21 days of service, or if the pleading is one to which a response is required, twenty-one days after service of a responsive pleading. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).
> In this case, Defendants filed an answer to Plaintiff's Complaint on September 14, 2012. (Doc. 9). Thus, Plaintiff must obtain Defendant's consent to file an amended complaint, or seek leave of the Court. See Fed. R. Civ. P. 15(a)(2).
> Nevertheless, Plaintiff has not filed a stipulation indicating the defendant consents to the pleading amendment and has not filed a motion for the Court's consideration with his First Amended Complaint. Thus, the First Amended Complaint, the amended pleading is **STRICKEN**.

(Doc. 45 at 1)  Despite this, Plaintiff took no further effort to amend his complaint and, as a result, the operative complaint is the one filed originally in Kern County Superior Court.  (Doc. 1-1)

The Union filed the current motion on August 16, 2013. (Doc. 46).  As the basis of its motion, the Union avers that: (1) § 301 of the Labor Management and Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts Plaintiff's breach of contract and fraud claims, (2) the LMRA bars suit against union officers in their individual capacity, (3) Plaintiff's fraud claim fails to comport with the requirements of Fed. R. Civ. P. 9(b), and (4) the principles of *res judicata* and collateral estoppel bar Plaintiff's claim for breach of the duty of fair representation which, they assert also encompasses the breach of contract and fraud claims. *See* (Doc. 46-1).  According to Plaintiff, the present motion is without merit. (Doc. 51).[8]

## II.     Legal Standard

Fed. R. Civ. P. 12(c) motion for judgment permits a party to move for judgment on the pleadings after the close of the pleadings, but early enough to avoid any delay in trial.  In considering

---

[8] Plaintiff also complains that the Union failed to meet and confer with him prior to filing the present motion pursuant to Local Rule 251. (Doc. 51 at 1).  However, Local Rule 251 requires parties to meet and confer before filing discovery motions made pursuant to Fed. R. Civ. P. 26 through 37.  As the Union brings its claim pursuant to Fed. R. Civ. P. 12(c), Plaintiff's there was no meet-and-confer obligation imposed by Local Rule.

such a motion, a court accepts the veracity of all factual allegations in the complaint and construes them in favor of the non-moving party. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). A court properly grants a judgment on the pleadings where: (1) no issue of material fact exists and (2) the moving party is entitled to a decision as a matter of law. Fleming, 581 F.3d at 925; Lyon v. Chase Bank USA, N.A., 656 F.3d 877, 883 (9th Cir. 2011) ("A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of law" (internal citations and quotations omitted)).  Given that the Union filed its Fed.R.Civ.P. 12(c) motion after the close of the pleadings and more than 10 months prior to the trial date, the Union has timely brought its motion under the Rule.

### III.   Discussion and Analysis

#### A.  § 301 of the Labor Management Relations Acts.

The Court previously explained in Jones v. Lehigh that the National Labor Management Relations Act ("LMRA") governs the fair labor standards for both employers and labor unions. 29 U.S.C. § § 151 *et seq*. Section 301 of the LMRA provides that "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…be brought in any district court of the United States." 29 U.S.C.A. § 185 (West).  Section 301 is understood "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985)). The rationale for this mandate is the creation of a uniform body of law to interpret collective bargaining agreements.

It is settled that section 301 preempts an employee's state-law claim against parties to a collective bargaining agreement where the claim rests on an interpretation of that agreement. Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008) (*quoting* Allis-Chalmers Corp, at 220.) Preemption applies whether (1) the claim arises directly from a collective bargaining agreement, or (2) claims which are "substantially dependent on analysis of a collective-bargaining agreement." Adkins, 526 F.3d at 539; Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 689 (9th Cir. 2001).

Preemption extends to any state tort claim which requires an interpretation of the terms of the collective bargaining agreement. Allis-Chalmers Corp., 471 U.S. 202 at 213 (because duty to act in

good faith was created by the contract, the claim was preempted by § 301). In <u>Allis-Chalmers Corp</u>, a plaintiff alleged that his former employer breached its duty to act in good faith, a tort under Wisconsin law, and that the former employer breached the collective bargaining unit. <u>Allis-Chalmers Corp</u>, 471 U.S. at 203. The United States Supreme Court considered that the tort duties arose from the existence of the collective bargaining agreement. <u>Id</u>. at 216-217. Thus, the Court held that the tort claim was preempted by § 301.

Here, the Union argues that Plaintiff explicitly bases his breach of contract and fraud claims on the CBA. (Doc. 46-1 at 7-8). Namely, Plaintiff references Articles 14, 18, and 19 of the CBA and indicates that these are the "essential terms of the agreement." <u>Id</u>. at 7.[9] The Union further argues that Plaintiff's claim of fraud or of "filing a false grievance" involves rights arising out of the CBA. <u>Id</u>

First, Articles 14 and 19 of the CBA address the subject matter of both Plaintiff's fraud and breach of contract claims. Article 14 sets forth the time frames and procedures by which the Union and Lehigh must resolve any disputes concerning the meaning or application of the CBA. (Doc. 47-9 at 20). Article 14 creates the Union's duty to file a grievance on an employee's behalf. Determining whether the Union failed in its contractual duty to timely represent Plaintiff in his grievance against Lehigh would require the Court to interpret the time frames and other requirements of the CBA. Finally, the determination of whether the Union "fraudulently" filed a grievance would necessitate interpretation of whether the Union acted within the scope of Article 14.

Article 19, on the other hand, addresses the Union's role in ensuring an employee's job security in the event of substantial changes at Lehigh, such as job displacement, layoffs or permanent shut downs. <u>Id</u>. at 27-32. Plaintiff alleges that the Union breached its contractual duty or duty under the CBA to assist him in retaining his job, such a cause of action would require an interpretation of Article 19. Thus, Plaintiff's claims for breach of contract and fraud are subsumed by the Union's duties created in Articles 14 and 19, and are thus preempted by § 301 of the LMRA.[10]

---

[9] The Union argues also that the claim for the breach of fiduciary duty may be preempted if it relies on the CBA. (Doc. 46-1). As the Court sufficiently addresses the duty of the fair representation elsewhere, it declines to address this argument.

[10] Plaintiff counters that his breach of contract claim is not preempted by § 301 because he alleges a "discrimination under Title 7 [of the] Civil Rights Act of 1964" is without merit. (Doc. 51). First, even if he had pleaded a

Second, courts have found that claims arising from the results of an employee's drug test, the procedures used in collecting or testing the sample and the union's failures related to the grievance challenging the drug testing procedures, are preempted by § 301. Clark v. Newport News Shipbuilding & Dry Dock Co., 937 F.2d 934, 936-938 (4th Cir. 1991) ([T]he rights of Clark and Newport News with respect to drug testing can be resolved only by reference to the collective-bargaining agreement and its express and implied provisions."]).

Accordingly, the Court finds that Plaintiff's state claims of the breach of contract and fraud preempted by § 301 of the LMRA[11] and, therefore, the Union's motion for judgment on the the pleadings on these grounds, is **GRANTED**.

**B. Duty of Fair Representation.**

    i. The Court construes Plaintiff's contract claims as a claim for the breach of the duty of fair representation.

The statutory duty of fair representation requires a union to refrain from acting in an arbitrary, discriminatory, or bad faith manner in its conduct toward members of its collective bargaining unit. Beck v. United Food & Commercial Workers Union, Local 99, 506 F.3d 874, 879 (9th Cir. 2007); Vaca v. Sipes, 386 U.S. 171, 177 (1967) ("It's now well established that…the Union had a statutory duty fairly to represent all [] employees, both in its collective bargaining…and in its enforcement of the resulting collective bargaining agreement.")  "The duty of fair representation exists because a single labor organization represents the interests of all employees within a unit, and if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct " Beck, 506 F.3d at 879 (*quoting* DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 n. 14 (1983) (internal quotations omitted); *See also*, Vaca, 386 U.S. at 177.  When

---

Title VII claim in his complaint, this would have no bearing on the breach of contract claim which he *does* claim arises out of the CBA.  Furthermore, Plaintiff's complaint is completely devoid of any reference to Title VII. *See* (Doc. 1-1 at 2-5). The Court previously advised Plaintiff of the standards for seeking leave to amend a pleading, as set forth in Fed. R. Civ. P. 15(a)(2), if he wished to pursue this; he did not. (Doc. 45).

[11] Given the Court has determined the fraud claim is preempted, the Court does not decide whether it was pleaded according to the standards set forth in Fed. R. Civ. P. 9(b).

1    analyzing a claim for the breach of the duty of fair representation, the burden of proof rests on the
2    plaintiff to provide substantial evidence the union engaged in fraudulent or dishonest conduct. Beck,
3    506 F.3d at 880.

4          The Union argues that the entirety of the complaint should be construed as a single action for
5    the breach of the duty of fair representation. (Doc. 46-1 at 5).  The Union argues that no contract
6    existed between the Union and Plaintiff. Id. (Doc. 51 at 4).  Consequently, because no contract
7    required the Union to act in a specific manner toward Plaintiff, the Union maintains that it could not
8    have violated any contractual duties toward Plaintiff. (Doc. 46-1 at 5).  The Union that federal law
9    permits members to pursue claims for breach of the duty of duty of fair representation against a union.
10   Id.

11         Plaintiff admits that no express contract existed between the Union and himself. (Doc. 51 at 4).
12   However, he argues that the Union had an implicit contractual obligation to represent his interests
13   under the CBA. Id. at 3-4.  He notes that "[t]he [U]nion's duty to each individual's claim is not to
14   discriminate unreasonably." (Doc. 51 at 4).  Further, he avers that the Union's "duty is to act as the
15   employees' representative in [grievance matters] to enforce their rights, not to deprive them of their
16   rights." Id.

17         Plaintiff fails to provide any persuasive authority to indicate that the Union had contractual
18   duties to represent him and the cases cited by him make clear the duty is entirely based on statute. For
19   example, in Vaca, a member alleged that the union arbitrarily refused to advocate on his behalf. Vaca,
20   386 U.S. at 173.  The United States Supreme Court noted that a labor organization's duty to fairly
21   represent a union member was based in the statutory provisions of the LMRA. *See* Id. at 177-180.  The
22   Court, however, did not indicate that union members may bring *state* contractual claims against a
23   union, which, as indicated above, are preempted by § 301 of the LMRA. *See* Vaca, 386 U.S. 171.

24         In any event, Plaintiff claims the Union breached its duty of fair representation.  Plaintiff
25   explicitly states in his complaint that the Union "failed to represent [him] while [he was] employed
26   with Lehigh." (Doc. 1-1 at 5).  He explains that the Union significantly delayed in pursuing his
27   grievance against Lehigh and thus failed to represent his interests therein. (Doc. 51 at 4).  Furthermore,
28   he expressly relies on legal authority, which as noted above, indicates that the Union's duty of fair

representation is statutorily, and not contractually, based. Vaca, 386 U.S. 171 at 909-910 ("It is now well established that, as the exclusive bargaining representative of the employees in Owens' bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with Swift, . . . and in its enforcement of the resulting collective bargaining agreement . . .").

Given that Plaintiff provides facts supporting a statutory claim for the breach of the statutory duty of fair representation, the Court construes Plaintiff's contractual claims as a claim for the breach of duty of fair representation.

  ii. <u>Plaintiff's claim for the breach of the duty of fair representation is barred by the doctrine of collateral estoppel</u>.

In order to prove that a union breached its duty of fair representation, an employee must prove that: (1) the employer breached the collective bargaining agreement, and (2) the union failed to fairly represent the employee. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990); DelCostello, 462 U.S. at 165; Bliesner v. Commc'n Workers of Am., 464 F.3d 910, 913-914 (9th Cir. 2006). Each element is determinative of the employee's ability to state a claim. *See* Bliesner, 464 F.3d at 914.

In DelCostello, 462 U.S. 151 at 164-65, the Court considered a similar issue. The Court held,

> [A]n employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. [Citations] Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. [Footnote] "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.' " [Citations] The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

Id., citations and footnote omitted. Likewise in DiPinto v. Sperling, 9 F.3d 2, 3 (1st Cir. 1993), the plaintiffs, probationary employees, sued the employer for discharging them without a hearing. The state court determined the claim lacked merit because, as probationary employees, they did not have the right to a hearing. Id. at 3-4. The plaintiffs then filed suit in federal court alleging violations of the

CBA and the union's failure to provide fair representation.  Id. at 4. In affirming the grant of summary judgment, the court held,

> A claim for breach of a Union's duty of fair representation cannot succeed absent a showing, inter alia, that the underlying action against the employer was meritorious. [Citations]  Here, the Union duly interposed its collateral estoppel defense (issue preclusion) in response to appellants' present attempt to relitigate the merits of their unsuccessful claims to a termination hearing. Mutuality of parties is not essential to a collateral estoppel defense under Rhode Island law. [Citation] Since appellants are collaterally estopped from relitigating the merits of their underlying claims against the City—an essential element of their unfair representation claims against the Union—the district court correctly entered summary judgment in favor of the Union. [Citation]

Id. at 4.   The Ninth Circuit permits district courts first to determine the issue of an employer's breach of the collective bargaining agreement prior to addressing a union's breach of the duty of fair representation. Bliesner, 464 F.3d at 914.

Plaintiff indicates first that Lehigh wrongfully terminated him in violation of the CBA by requiring him to submit to a drug test. (Doc. 1-1 at 5).  Second, he avers that the Union failed to represent him during the drug test and by filing a false grievance on his behalf. Id.  Nonetheless, the Union argues that the decision issued in the related Lehigh case bars Plaintiff's claim for breach of the duty of fair representation against the Union. (Doc. 46-1 at 9-14).

### a. Collateral Estoppel.

The doctrine of collateral estoppel protects a party from re-litigating identical issues. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979).  Federal law controls a collateral estoppel analysis where the federal court adjudicated the merits in a different case. McQuillion v. Schwarzenegger, 369 F.3d 1091, 1096 (9th Cir. 2004).  Under federal law, the doctrine of collateral estoppel applies where: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." McQuillion, 369 F.3d at 1096 (internal quotations and citations omitted); *See also* Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992).

In Jones v. Lehigh Southwest Cement Co., Inc., Case No. 1:12-cv-0633-AWI-JLT, the Court

addressed the substantive merits of whether Lehigh breached the collective bargaining agreement, which is identical to the present issue that Plaintiff must prove. (Doc. 47-8 at 8-11).  In granting Lehigh's second motion to dismiss, the Court addressed Plaintiff's two possible LMRA claims against Lehigh for the breach of the collective bargaining agreement. Id.  First, Plaintiff alleged that the requiring the confirmatory drug test at the hospital after a preliminary drug screens at the work site violated the Substance Abuse Policy as contained in the CBA. Id. at 9.  The Court rejected this argument.

> While the Policy definitely provides that confirmatory testing will be performed in the presence of a positive screening test, **the Policy does not prohibit confirmatory testing in the presence of negative preliminary results**. The court finds that language of the Policy, although regrettably vague, may be interpreted to provide weight to Plaintiff's contention that the sample used to do the confirmatory testing was mishandled in view of the negative results obtained during preliminary testing. However, **the court finds the fact that confirmatory testing was carried out in the absence of positive screening test results does not constitute a breach of the CBA or a basis for a claim for relief under the LMRA**.

(Doc. 47-8 at 9, emphasis added.)

With regard to the second theory, Plaintiff argued Lehigh breached the CBA by failing to ensure the presence of a Union representative during his drug testing.[12] (Doc. 47-8 at 10).  The Court noted that the Union representative was to be present at the time of the on-site drug screen but the Union had no function except to review the test results. Id.  Moreover, the Court noted that Lehigh *did* notify the Union of the pending confirmatory test, but the Union declined to provide a representative. Id.  In granting Lehigh's motion to dismiss, the Court noted that Lehigh could not be held liable for the Union's omission to provide a representative. Id.  The Court held,

> With regard to the lack of Union representation, the Policy provides that a Union representative will be "present" during the on-site preliminary testing, but does not specify a function for the Union representative other than to review the results of the preliminary testing. Doc. # 29 at 34. As to off-site confirmatory testing, however, the Policy specifies that a [sic] employee who is to be transported to a medical facility for confirmatory testing "will be accompanied by a [U]nion representative." Id. at 33. While Plaintiff's SAC, as well as his prior pleadings, do not allege that there was no review of the preliminary drug test results by a Union Representative, Plaintiff has continuously maintained that Defendant notified the Union that Plaintiff was to be transported to the hospital for confirmatory drug testing and that the Union declined to

---

[12] Notably, at the hearing, Plaintiff confirmed that his "beef" against the Union was that it failed to represent him related to the entirety of the drug-testing events.  Plaintiff clarified that he felt the Union should have prevented him from having to give a drug test given his position that he was not part of the accident which was the cause of Lehigh requiring the drug test.  Thus, as he sees it, had the Union prevented the taking of drug test, he would not have been fired.

> designate a representative to accompany Plaintiff. While a company that "participates" in union conduct that violates the LMRA may itself be held liable for its part in that conduct, Vaca v. Sipes, 386 U.S. 171, 178 (1967), the facts alleged in Defendant's SAC do not support a finding or inference that Defendant was a "participant" in failing to provide Union representation. Defendant did its part by informing the Union that Plaintiff was to be transported for confirmatory drug testing. There is no allegation that the Union requested a delay so that a representative could be supplied. Logically, it cannot be the case that Defendant is held liable as a result of conducting a confirmatory drug testing because the Union, after being informed of the situation, declines to provide a representative. If that were the case, the entire purpose of the Policy could be thwarted by the Union simply by declining to provide representation when the Policy calls for it. The court finds that facts are lacking to show that Defendant was a "participant" in the failure to provide a Union representative at the time Plaintiff was transported for confirmatory drug testing.

(Doc. 47-8 at 9-10, emphasis added.) Therefore, the Court in Lehigh found that the employer did not breach the CBA as it relates to the confirmatory drug testing and the failure to provide union representation when the drug testing occurred.

When considering whether a matter was actually litigated, courts consider whether a court decided the prior issued in the adversarial context. In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983) (A party who previously litigated a matter for 16 months prior to abandoning his claim was collaterally estopped from asserting a subsequent claim.) Here, as noted above, the Court in Lehigh, considered at length the obligations and circumstances related to the drug testing of Plaintiff which resulted in his termination. It determined that Lehigh did not breach the CBA by requiring confirmatory testing at the hospital nor did it interfere with or condone any failure by the Union to provide a representative to be present with Plaintiff while he was at the hospital. (Doc. 47-8 at 8-10). Thus, these issues were actually litigated and determined by the Court.

Moreover, the Court notes Plaintiff had a full and fair opportunity to litigate these issues given Jones v. Lehigh was pending for over a year prior to the Court's dismissal of the LMRA claim against Lehigh. See Case Number 1:12-cv-00633-AWI-JLT at Doc. 1. More importantly, Plaintiff previously argued at length against the Court's dismissal of Plaintiff's LMRA claim against Lehigh on two separate occasions in Jones v. Lehigh. See Id. at Docs. 19 and 35.

Finally, the Court notes that the determination in Lehigh, was a critical part of the order dismissing the action without prejudice. Thus, the Court concludes the doctrine of collateral estoppel applies here. Moreover, Plaintiff fails to overcome the binding effect of the order issued in Lehigh.

Rather, Plaintiff argues that Court's prior "decision does not offer an opinion on the [U]nion's discrimination against the [P]laintiff." (Doc. 51 at 13). The Court notes again that Plaintiff's complaint in this action does not raise any claim of discrimination and it would be improper to consider new allegations at this juncture.

Based upon the foregoing, the Court finds the doctrine of collateral estoppel bars Plaintiff's claim against the Union. Consequently, further amendment of the complaint would be futile. Therefore, the motion for judgment on this basis is **GRANTED**.

**C. Immunity of Individual Union Members.**

According to the United States Supreme Court, Section 301 of the LMRA, 29 U.S.C. § 185(b), prohibits suits for the breach of the collective bargaining agreement against individual union member and officers. violation of the no-strike clause, its officers and members are not liable for these damages. Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 415-16 (1981) ("Congress deliberately chose to allow a damages remedy for breach of the no-strike provision of a collective-bargaining agreement only against *unions*, not *individual*." (emphasis in original)l Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 249 (1962). The Ninth Circuit, interpreting Atkins, has determined that Section 301 provides immunity to individual union members from against suits for the breach of the duty of fair representation and from state tort claims against when brought in connection with a claim of breach of the collective bargaining unit. Evangelista v. Inlandboatmen's Union of Pac., 777 F.2d 1390, 1400 (9th Cir. 1985).

The Union argues that Section 301 of the LMRA shields Local Union President Sean Pugh and Union Representative Bill Locke from liability in this suit. (Doc. 46-1 at 9). Plaintiff provides no legal authority to counter Plaintiff's argument. Notably, Plaintiff alleges that Pugh and Locke "breached their fiduciary duties and filed a fraudulent grievance" and "did nothing to immediately resolve the issue that was at hand" without further explanation. (Doc. 1-1 at 4). Consequently, he sets forth a textbook example of a suit against individual union members brought in connection with a claim of breach of the collective bargaining unit. Evangelista, 777 F.2d at 1400. Thus, the claim against Locke and Pugh is barred by 29 U.S.C. § 185(b) and the motion for judgment is **GRANTED**.

///

**ORDER**

According, the Court HEREBY ORDERS that:

1. The motion for judgment on the pleadings (Doc. 46) is **GRANTED** ; and
2. The request for judicial notice (Doc. 47-9) is **GRANTED**:
3. The Clerk of the Court is **DIRECTED** to close this matter.

IT IS SO ORDERED.

Dated:   **September 26, 2013**            **/s/ Jennifer L. Thurston**
                                                             UNITED STATES MAGISTRATE JUDGE